IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CATHERINE MARIE HAMBORSKY, | ) | Civil Action No. 12 – 746 |
| | ) | |
| Petitioner, | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| v. | ) | |
| | ) | |
| RHONDA A. WINSTEAD, *Superintendent SCI at Cambridge Springs* and JACK HENEKS, *District Attorney, Fayette County, Pennsylvania*, | ) ) ) ) | |
| | | |
| Respondents. | | |

## MEMORANDUM OPINION

Petitioner, Catherine Marie Hamborsky (hereinafter referred to as "Petitioner"), a state prisoner currently incarcerated at the State Correctional Institution in Cambridge Springs, Pennsylvania, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, the petition will be denied.

### A. Relevant Factual and Procedural History

The facts of the crime as set forth by the Pennsylvania Superior Court in the appeal of the denial of Petitioner's petition filed pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA") 42 Pa. Const. Stat. § 9541, *et seq.* are as follows:

> On the night of January 3, 2005, [Petitioner] and her husband were at J.J.'s Bar operated by Tom Lesniak, the victim and decedent. Witnesses observed [Petitioner] playing the video poker machine for more than an hour; afterwards [Petitioner] and her husband left the bar at around 10:30 p.m. [Petitioner] returned several hours later and was observed arguing with Lesniak over money at around 1:57 a.m. That was the last time

[Lesniak] was ever seen alive. Around 9:00 a.m. the following morning, the Everson Fire Department responded to a report of a fire at J.J.'s Bar. At the scene, fire department personnel discovered [Lesniak's] severely burned body. A gas can, later determined to have been used to start the fire, was found just outside the bar.

[Petitioner] gave three separate statements to Pennsylvania State Troopers. During the first statement, she admitted to being at the bar the previous evening with her husband, drinking and playing the video poker machines, but that they left at 10:30 p.m., and never returned. In the second statement, [Petitioner] admitted to returning to the bar that night alone to play more video poker, and stated that [Lesniak] had been fine when she left. Finally, after her husband had told the police that the gas can found outside the bar belonged to them, [Petitioner] admitted to returning to the bar and eventually stabbing and shooting [Lesniak]. [Petitioner] maintained, however, that the decedent had attempted to rape her and that she acted in self-defense.

Prior to the confession, there was some confusion regarding the cause of death, primarily because of the difficulties in performing the autopsies. [Lesniak] weighed approximately three hundred and fifty pounds, and his body was partially destroyed by the fire. During the first autopsy, no bullets were discovered as they had not traversed any vital organs. Nevertheless, after [Petitioner's] confession, a second examination discovered five bullets and led the pathologist to rule the cause of death as homicide, specifically cardiac arrhythmia due to myocardial ischemia. This condition resulted from bleeding caused by the multiple gunshot wounds and was aggravated by a pre-existing enlarged heart.

The Commonwealth presented evidence at trial indicating that [Lesniak] had been shot in the back and that the murder weapon had been thrown into a nearby river. Witnesses for the prosecution observed [Petitioner's ] car driving back and forth in front of the burning bar prior to the arrival of fire department personnel.

On May 5, 2006, [Petitioner] was convicted of third-degree murder as well as two counts of arson and abuse of a corpse. On May 18, 2006, [Petitioner] was sentenced to not less than 145 to not more than 290 months imprisonment.

ECF No. 14-3 at 1-2 (Opinion of the Superior Court).

Following Petitioner's conviction and direct appeal she filed a PCRA Petition wherein she asserted that trial counsel was ineffective for failing to present testimony from a forensic pathologist, which would have contradicted the testimony of the Commonwealth's forensic pathologist and would have established that the decedent's death was not caused by criminal means. ECF No. 1 at 2. The evidentiary hearing on Petitioner's PCRA petition was split over two days: March 24, 2009, and September 25, 2009. Witnesses at the evidentiary hearing included Dr. David Fowler, the forensic pathologist offered to counter the Commonwealth's expert, and who, the Petitioner argued, should have been retained by trial counsel; Petitioner's

2

original trial counsel, Attorney Samuel Davis; and the Commonwealth's forensic pathologist, Dr. Cyril Wecht, who testified at trial regarding the decedent's cause of death.

In July 2010, the PCRA petition was denied.  The trial court noted that "Dr. Fowler's testimony was a complete unknown at the time of trial.  His availability and testimony at the time of the PCRA hearing is complete 20/20 hindsight relative to what anyone on the defense team knew at the time the investigation and trial preparation were completed."  ECF No. 14-15 at 3 (PCRA Opinion & Order).  The trial court did not find that Attorney Davis was ineffective for choosing not to call Dr. Fowler in light of a number of factors, including the lack of funds for or request for an expert witness in the first place; trial counsel's strategy to pursue the self-defense theory of the case; the weight of Dr. Wecht's testimony; and the Petitioner's confession to police and actions immediately following the incident, among other factors.

In August 2010, the Superior Court issued a Memorandum Opinion on the matter, denying Petitioner's appeal of her PCRA petition.  The Superior Court emphasized that the trial court's findings cannot be disturbed unless no support for those findings exists in the record. ECF No. 14-3 at 3 (Opinion of the Superior Court).  One year later, the Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal for the PCRA petition.

On June 4, 2012, Petitioner filed the Petition for a Writ of Habeas Corpus presently before this court, pursuant to 28 U.S.C. §2254, and raised the following claim:

> Trial counsel unreasonably failed to present testimony from a forensic pathologist which would have contradicted the testimony of the Commonwealth's forensic pathologist as to criminal cause of death and, in fact, would have established that the decedent's cause of death was not caused by criminal means.

ECF No. 1 at 4 (Petition for Writ of Habeas Corpus).  Respondents filed an Answer to the Petition on August 1, 2012.  ECF No. 14 (Answer to Petition).  It is now ripe for review.

**B.  Discussion**

Petitioner argues that her trial counsel's failure to call a forensic pathologist to counter the Commonwealth's forensic pathologist denied her effective assistance of counsel because this failure allowed the Commonwealth's expert to go unchallenged.  ECF No. 1 at 5.  Petitioner claims that had Dr. Fowler, the forensic pathologist retained by the Petitioner during the post-conviction proceedings and who testified during the PCRA evidentiary hearing, been retained during the original trial, the jury "could well have had at least a reasonable doubt with regard to causation."  Id. at 6.  According to the Petitioner, the jury was deprived of an opportunity to weigh conclusions from both experts, thereby depriving Petitioner the right to a fair trial.  Id. at 6-7.

A federal court must keep in mind the standard of review to be applied to allegations of trial error.  Although criminal defendants are entitled to a fair trial, this does not require that the trial be perfect.  "[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial," and the Constitution does not demand one.  United States v. Hasting, 461 U.S. 499, 508 (1983) (internal citations omitted).  The focus on fairness, rather than on perfections, protects society from individuals who have been duly and fairly convicted of crimes, thereby promoting "public respect for the criminal process."  Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).

The basis for Petitioner's claim rests primarily on the events of the PCRA evidentiary hearing on March 24, 2009.  Dr. Fowler testified as an expert in the field of forensic pathology during this hearing.  ECF No. 14-11 at 8 (Post-Conviction Collateral Relief Act Proceedings).  After reviewing the autopsy report prepared by the Commonwealth's forensic pathologist, Dr.

4

Cyril Wecht, Dr. Fowler disagreed with Dr. Wecht's listed cause of the decedent's death.  Id. at 9-13.  Ultimately, Dr. Fowler concluded that Lesniak was dead before shots were fired.  Id. at 20.  Later in his testimony, Dr. Fowler took issue with other aspects of Dr. Wecht's autopsy report.

After Dr. Fowler testified, the Petitioner's family members testified that sufficient funds were available to pay for the defense, including attorney's fees and fees for an expert.  Id. at 61.  This testimony revealed that the possibility of retaining an expert witness had been discussed on each occasion that the family met with Petitioner's trial counsel.  Although the family requested the retention of expert witness, the Petitioner's family was consistently assured by Attorney Davis that he "[would] deal with Cyril Wecht."  Id. at 60-61.

Following this testimony, Petitioner's original trial counsel, Attorney Samuel Davis, was called to the stand.  He, however, told a different story than that of Petitioner's family.  Davis testified that he was only paid less than (he estimated) $15,000, in periodic payments, despite the fact that the family had previously testified that over $95,000 was available for the defense.  Id. at 66.  Davis testified that, based on the payment plan established by the family, he did not believe that money was available to hire an expert.  "If they provided funds to hire an expert, certainly an expert would have been hired . . . .  If they wanted to hire an expert, I would have been delighted to hire an expert."  Id.  Davis then stated that the evidentiary hearing testimony was the first time that he had heard about the availability of $95,000.  Id.  Additionally, trial counsel expressed concern over how to approach the case, considering a number of obstacles, including Petitioner's own statement to the police (and subsequent testimony), and the complex nature of the chain of events, among other things.  Id. at 68-71.  Davis testified that the primary focus of his case was the self-defense issue; however, he did present both alternatives to the jury.  Id. at 82-83.

This Court is required to review Petitioner's claim in accordance with the standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). Specifically, in order to be entitled to relief, Petitioner must show that the Pennsylvania Court's decision upholding the denial of the PCRA petition was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.[1]  This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (internal citations omitted).  The Petitioner carries the burden of proof.

A state court ruling is an "unreasonable application" if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply.  Harris v. Ricci, 607 F.3d 92, 96 (3d Cir. 2010).

The Court of Appeals for the Third Circuit recently outlined the proper review of state court decisions under AEDPA in Harris.  In describing a federal court's role in habeas review, the Court of Appeals for the Third Circuit explained as follows:

> . . ., we cannot decide this case on the basis of any of those authorities because, as we noted at the outset, this case is governed by AEDPA.  Harris must show that the New Jersey Supreme Court's decision upholding the use of foreign jurors to ameliorate the effects of the pretrial publicity was contrary to law clearly

---

[1]      Some circuit court of appeals have restricted their review under AEDPA to United States Supreme Court decisions alone.  See, e.g., Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (considering itself barred from examining "lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law").  The Court of Appeals for the Third Circuit, however, has concluded that decisions of federal courts below the level of the United States Supreme Court may be helpful to us in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as "helpful amplifications" of that precedent.  Moore v. Morton, 255 F.3d 95, 105 (3d Cir. 2001) (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir.) (en banc), cert. denied, 528 U.S. 824 (1999)).

established by the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d)(1).  Even Harris concedes that the Supreme Court has never squarely considered this issue.

A recent decision of the Supreme Court illustrates its deferential approach to the state courts' decisions, even in the face of what appears to be its doubt about the merits of that decision.  In <u>Renico v. Lett</u>, ___ U.S. ___, 130 S. Ct. 1855, 1861-62 (2010), the Court reviewed the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury "had deliberated for at least four hours following a relatively short, and far from complex, trial . . . ."  The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion.  The federal district court granted a writ of habeas corpus, and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity.

The Supreme Court reversed and its reasoning is instructive here.  It stated that the question "is not whether the trial judge should have declared a mistrial.  It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review.  The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was 'an unreasonable application of . . . clearly established Federal law,'" and it later explained that the application must be "objectively unreasonable."  In reversing the Court of Appeals, the Court stated in a footnote, "whether the trial judge was right or wrong is not the pertinent question under AEDPA."  It noted that the Michigan Supreme Court's decision, "while not necessarily correct – was not objectively unreasonable."

<u>Harris</u>, 607 F.3d at 98-100 (internal footnotes, citations and quotations omitted).

Thus, the question for review is whether the Pennsylvania Superior Court's determination that Petitioner's trial counsel was not ineffective for failing to call a counter expert because it did not fit with his trial strategy was an unreasonable application of clearly established federal law. Review of clearly established federal law suggests that trial counsel was not ineffective.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial."  <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 368 (1993) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 684 (1984)).  <u>See</u> <u>also</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374 (1986) (the

essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance:  1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense.  Strickland, 466 U.S. at 687.  The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 688. To satisfy this prong, a petitioner must show that any errors made were so serious as to deprive the petitioner of counsel as guaranteed by the Sixth Amendment.  DeShields v. Snyder, 830 F. Supp. 819, 824 (D. Del. 1993) (also citing Strickland).  In making such a determination, a court is to look to the totality of the circumstances.  Id.  On review, the Court is to presume that the attorney's conduct falls within the realm of objective reasonableness and it is the burden of the petitioner to show otherwise.  Id.  "Judicial scrutiny of counsel's performance must be highly deferential."  Knowles v. Mirzayance, 556 U.S. 111, 124 (2009) (citing Strickland).  "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id., see also McBride v. Superintendent, SCI Houtzdale, 687 F.3d 92, 102 (3d Cir. 2012) cert. denied, 133 S. Ct. 999 (U.S. 2013) ("We must eliminate the distorting effects of hindsight and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.") (internal citations and quotations omitted).  Defense counsel has never been required to pursue every claim or defense, regardless of merit, viability, or reasonable chance for success.  Knowles, at 123 and 127 ("The law does not require counsel to raise every available nonfrivolous defense.  Counsel is not required to

8

have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether.") (internal citations omitted).

The second prong of <u>Strickland</u> requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable.  <u>Strickland</u>, 466 U.S. at 689. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  <u>Id</u>. at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome. <u>Id</u>.  A showing of reasonable probability may not be based on mere speculation.  <u>United States v. Gray</u>, 878 F.2d 702, 712 (3d. Cir. 1989) (refusing to find that the "prejudice" prong of <u>Strickland</u> could be met where the prejudice was based solely on speculation as to what an absent witness may have testified to).  A defendant is not entitled to relief unless he makes *both* showings.  466 U.S. at 687 (emphasis added).

In analyzing Petitioner's claims under the two-part test announced in <u>Strickland</u>, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings.  The question of effectiveness of counsel under <u>Strickland</u> is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations.  <u>Berryman v. Morton</u>, 100 F.3d 1089, 1095 (3d Cir. 1996).  In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the presumption applies.  <u>Id</u>.  Likewise, a state court's determination that a decision was a tactical one is a question of fact.  <u>Id</u>.  A state court's determination of whether such strategy or decision was reasonable, however, is a question of law.  <u>Id</u>.  <u>See also</u> <u>McAleese v. Mazurkiewicz</u>, 1 F.3d 159, 166 (3d Cir.) ("[A] state court's conclusion that counsel rendered

effective assistance is not a finding of fact subject to deference by a federal court."), <u>cert. denied</u>, 510 U.S. 1028 (1993).

Faced with a number of obstacles, Attorney Davis made a strategic decision not to call an expert witness to counter the Commonwealth's forensic pathologist.  Davis had to contend with the evidence already stacked against his client, including Petitioner's confession to police. Accordingly, trial counsel selected a self-defense theory of the case—the theory that he believed was most likely to be viewed favorably by the jury and also least likely to confuse the jury. Davis was also concerned with the "star-power" of the Commonwealth's well-known forensic pathologist, and sought to minimize the time that the jury heard from this witness.  Further, Davis reasoned that calling a counter-expert would fail to provide new information, especially in light of his belief that he could effectively cross-examine the Commonwealth's forensic pathologist to secure the same information.  Finances were also at issue—Davis did not believe that funds were available for an expert witness, but testified that had the client requested an expert, and had funds been available, he would have gladly hired one.  Taken as a whole and granting deference to the findings of the state court, trial counsel's performance was not unreasonable.  Here, Petitioner fails to satisfy the first prong of <u>Strickland</u>.  Attorney Davis' representation of Petitioner did not fall below the objective standard of reasonableness.  Because <u>Strickland</u> requires that both prongs be met, and Petitioner fails to meet the requirements of the first prong, there is no need here for a prejudice analysis under <u>Strickland</u>'s second prong.

Petitioner relies on <u>Commonwealth v. McClellan</u>, 887 A.2d 291 (Pa. Super. Ct. 2005), arguing that Dr. Fowler's testimony creates a new issue for the jury to consider in the way that Dr. Baden's testimony did in <u>McClellan</u>.  In <u>McClellan</u>, the Appellant was charged with killing her infant son.  <u>Id</u>. at 294.  On appeal from the PCRA denial, the Superior Court of Pennsylvania

found that McClellan's trial counsel was ineffective for intentionally violating the Pennsylvania Rules of Criminal Procedure. Id. at 293. During McClellan's trial, the Commonwealth's expert witness testified regarding the child's injuries, the cause of those injuries, and the time of death. Id. at 295. McClelland's attorney sought and consulted with two expert witnesses, with the intention that one of the experts, Dr. Baden, actually testify at trial. Id. at 300-01. Dr. Baden's findings placed the child's time of death at a time when the Appellant was away from the home. Id. at 295. However, the trial court refused to allow Dr. Baden to testify because trial counsel failed to follow the notice requirements of the Pennsylvania Rules of Criminal Procedure. Id. at 295-96. The Superior Court could find no reasonable basis for McClellan's trial counsel's failure to follow the Pennsylvania Rules of Criminal Procedure, and remanded the case for a new trial. Id. at 303.

Dr. Fowler's testimony cannot be new evidence. Although Petitioner is correct that Dr. Fowler's testimony creates a "new issue of credibility," in the sense that Dr. Fowler is a new voice in this matter, Dr. Fowler was not retained until after Petitioner's trial had concluded. Dr. Fowler's testimony and conclusions are not truly new evidence because this material could have been discovered earlier by trial counsel through the exercise of due diligence. See United States v. Jasin, 280 F.3d 355, 361 (3d Cir. 2002); Houck v. Stickman, 625 F.3d 88, 93-94 (3rd Cir. 2010).

Further, Petitioner's situation is distinguishable from McClellan. Dr. Fowler was not precluded from testifying due to a failure of notice; rather, Dr. Fowler was an unknown at the time of trial. In McClellan, Dr. Baden became known at the start of trial, yet no notice of his expert testimony was provided. Attorney Davis did address the issues raised by Dr. Fowler—he chose to address them by cross-examining the Commonwealth's expert, instead of calling an

expert of his own.  Attorney Davis testified at the PCRA hearing that he asked Dr. Wecht on cross-examination about the Lesniak's enlarged heart and the role that the enlarged heart played in Lesniak's death, as well as Lesniak's cocaine use just prior to his death.  ECF No. 14-11 at 69 (Post-Conviction Collateral Relief act Proceedings); see also ECF No. 14-9 at 268-72 (Transcript Day 3 of Jury Trial, Cross Exam of Dr. Cyril Wecht).  Ultimately, the addition of Dr. Fowler's conclusions regarding Lesniak's cause of death calls for the very hindsight that Strickland was trying to prevent.

Petitioner has not shown that the determination by the Pennsylvania Superior Court that trial counsel was not ineffective is contrary to or an unreasonable application of clearly established federal law.  Consequently, her petition for habeas corpus must be denied.

## C.  Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  As provided for in 28 U.S.C. § 2253, "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  Applying these standards here, Petitioner has not made the requisite showing in these circumstances.  Accordingly, a certificate of appealability will be denied.  A separate Order will follow.

Dated:  July 16, 2013

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge


Cc:      Counsel of record